|,ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 
 *
 

 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Karl Guilbeau, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.
 
 [1]
 

 UNDERLYING FACTS AND PROCEDURAL HISTORY
 

 In 2002, Thomas and Zarin Miller contracted with Deltatech Construction, LLC (“Deltatech”) to build a custom-designed house in St. Tammany Parish. Shortly after the Millers took occupancy of the house in 2003, they began to have problems with the stained concrete flooring on the first floor of the residence. In response to the Millers’ complaints, the owner of Deltatech, Sandra Tomasetti,
 
 [2]
 
 arranged for an inspection of the flooring by representatives of Duckback Products and The Sherwin-Williams Company, the manufacturer and supplier, respectively, of the staining product that had been applied to the surface of the floors. The inspection indicated the problems arose from improper installation or application of the floor stain. Ms. Tomasetti and the flooring installer, John Arce, vigorously disputed this assertion and claimed the stain was defective. Ms. Tomasetti and Mr. Arce made various attempts to repair the Millers’ floors but were not successful.
 

 Thereafter, in an attempt to recover the expenses she incurred in the remediation effort, Ms. Tomasetti asked respondent to look into the possibility of filing a lawsuit against Sherwin-Williams and Duckback. Respondent agreed but was concerned about who should properly be the plaintiff, as Ms. Tomasetti had purchased the floor stain product, but it was now incorporated into the Millers’ home. Respondent discussed the issue with another attorney and came up with the idea that the Millers would assign their rights to Ms. Tomasetti and Deltatech.
 

 Meanwhile, having been unable to satisfactorily resolve the problems with the flooring, Mrs. Miller had decided to consult a lawyer. She made an appointment to meet with Mandeville attorney Gerry Barrios on June 7, 2004. Just prior to the consultation, Mrs. Miller spoke by telephone with respondent regarding the claim against Sherwin-Williams. Following this conversation, which lasted approximately three minutes, Mrs. Miller met with Mr. Barrios to discuss the matter involving Ms. Tomasetti and Deltatech. Mrs. Miller ultimately decided not to retain Mr. Barrios to represent her.
 

 Some weeks later, Ms. Tomasetti presented to Mrs. Miller the assignment of rights which respondent had prepared. After discussing the matter with her husband, Mrs. Miller signed the assignment
 
 *210
 
 on August 7, 2004 and returned it to respondent. No consideration for the assignment passed between respondent and the Millers.
 

 Thereafter, in September 2004, respondent filed suit against Sherwin-Williams and Duckback in the 22nd Judicial District Court for the Parish of St. Tammany. The plaintiffs were Deltatech and Ms. To-masetti, “individually, and as assignee of the rights in this action of Thomas and Zarin Miller,_” and the flooring installer, John | <;Arce, individually and doing business as John Arce Painting. In October 2004, Sherwin-Williams removed the case to federal court. Respondent did not enroll in the federal court litigation, as he informed Ms. Tomasetti he did not practice in federal court. Ms. Tomasetti interviewed another attorney and determined the expense involved in going forward with the case in federal court was not worth her while. According to Ms. Tomasetti, the floors had been repaired to the best of her ability and she saw no point in proceeding with the suit against Sherwin-Williams. In January 2006, the federal court dismissed the suit.
 

 Meanwhile, the Millers became concerned that their claims under the New Home Warranty Act were approaching prescription, inasmuch as Ms. Tomasetti had failed to repair the floors as promised. In December 2004, they retained Coving-ton attorney Martin Morgan to represent them in a suit against Deltatech and Ms. Tomasetti, which Mr. Morgan filed in February 2005. Respondent filed an answer to the suit on behalf of the defendants in May 2005, denying any responsibility for the defective flooring. In addition, respondent also claimed the Millers were “without right” to bring suit against Deltatech, citing the assignment previously obtained from the Millers. In February 2006, the Millei's filed a complaint against respondent with the ODC, alleging he engaged in a conflict of interest by representing Del-tatech in the matter “whilst he is supposedly still representing us against Sherwin Williams.”
 

 DISCIPLINARY PROCEEDINGS
 

 Following its investigation, the ODC filed one count of formal charges, alleging respondent’s conduct as set forth above violated Rules 1.7 (concurrent conflict of interest), 1.9 (duties to former clients), 4.3 (dealing with unrepresented persons), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or | misrepresentation) of the Rules of Professional Conduct. Respondent filed a response to the formal charges, essentially denying any misconduct. This matter then proceeded to a formal hearing on the merits.
 

 Hearing Committee Report
 

 After considering the evidence and testimony presented at the hearing, the hearing committee made factual findings, including the following:
 

 Respondent discussed the issue of the lawsuit against Sherwin-Williams with another attorney, possibly Gerardo Barrios, and together or separately they came up with the idea of an assignment of rights. Respondent procured an assignment form and Ms. Tomasetti presented it to Mrs. Miller for signing. Mrs. Miller held the assignment for several weeks to discuss it with her husband and/or attorney. She eventually signed the document and returned it to respondent. No consideration for the assignment passed between respondent and the Millers.
 

 •Thereafter, respondent filed suit against Sherwin-Williams and Duckback in St. Tammany Parish. Plaintiffs were Delta-tech and Ms. Tomasetti, individually and as assignee of the rights of the Millers, as well as Mr. Arce. The suit was removed to
 
 *211
 
 federal court by Sherwin-Williams. Respondent informed Ms. Tomasetti he did not practice in federal court. She interviewed another attorney and determined the expense involved in going forward with the case in federal court was not worthwhile. The floors had been repaired to the best of Ms. Tomasetti’s ability and she saw no point in proceeding with the suit. The suit was dismissed on January 26, 2006.
 

 During this time, the Millers became concerned their claims against Ms. Toma-setti were approaching prescription under the New Home Warranty Act. They hired separate counsel to prosecute claims against Ms. Tomasetti and filed suit Ragainst her on February 3, 2005. Respondent filed an answer to the Millers’ claims on behalf of Ms. Tomasetti on May 24, 2005. Mrs. Miller testified she was “shocked” when she saw respondent was representing Ms. Tomasetti, because she thought he was representing her.
 

 The committee specifically found respondent intended to and did represent Ms. Tomasetti and Deltatech in connection with their claims against Sherwin-Williams and Duckback and in defense of the subsequent claims against them by the Millers. Respondent obtained the assignment from the Millers regarding their claims against Sherwin-Williams and Duckback but gave no consideration for the assignment. Respondent used a form for purposes of the assignment without thoroughly researching the import or implications of this action. Nevertheless, he did not intend to nor did he enter into an agreement of legal representation with the Millers. Mrs. Miller testified she believed respondent would be representing her in the matter involving Sherwin-Williams and her floors; however, the committee did not find her testimony to be credible on this point. She testified at the hearing she had a single three-minute cellular telephone conversation with respondent before she went to meet with Mr. Barrios. She subsequently received the assignment from Ms. Tomasetti, a nonlawyer. She never met respondent in person prior to signing the assignment form. According to respondent’s testimony at the hearing, he never promised to represent Mrs. Miller or to prosecute her claims against Sherwin-Williams. The committee found at all pertinent times, Mrs. Miller was a mature, sophisticated, and well-educated consumer of contracting services. She could not reasonably have assumed respondent was representing her in a lawsuit based upon a three-minute cell phone conversation with a person who may or may not have been respondent or even an attorney. She was aware from her meeting with Mr. Barrios that attorneys use an ^engagement letter to secure representation of their clients. She was further aware from the letter of engagement that arrangements for fees are to be agreed upon in advance. The committee found there was no agreement or discussion with respondent for payment of any fees or reimbursement of any costs. Although Mrs. Miller was certainly aware she could have hired a separate attorney to pursue her interests, which she eventually did do, she chose not to engage an attorney or commit to paying legal fees, stating, “We were going to see how this thing played out.”
 

 Based on these findings, the committee determined there was not clear and convincing evidence respondent intended to or in fact ever did represent the Millers in this matter. Accordingly, the committee found no violation by respondent of Rules 1.7 or 1.9, pertaining to conflicts of interest with current and former clients. However, the committee found respondent did commit misconduct by dealing unfairly with unrepresented persons, and he therefore violated Rules 4.3 and 8.4(c). The
 
 *212
 
 committee found it was inappropriate for respondent to permit Ms. Tomasetti to transmit the assignment document to Mrs. Miller, an unrepresented person, without any direct, explicit conversation or explanation from him. Although respondent claims he believed Mrs. Miller had a lawyer, if that was indeed his belief, he should have transmitted the assignment to the lawyer. Respondent had an obligation to clarify his professional relationship with Ms. Tomasetti to Mrs. Miller. He should have anticipated that Mrs. Miller could have misunderstood his role with respect to the assignment of rights, but he made no effort to clarify the relationships among the parties or to correct the misunderstanding. He provided no written explanation to Mrs. Miller and obtained nothing from her to indicate her understanding of the relationship other than the assignment itself. In light of the potential for a conflict of interest between Mrs. Miller and Ms. Tomasetti, respondent had an obligation tojjclearly state his position, which he failed to do. His omissions constitute professional conduct by misrepresentation in violation of Rule 8.4(c).
 

 The committee determined respondent violated duties owed to the public and to the profession. His conduct was negligent but caused little or no actual injury. Even though the Millers assigned their rights to the Sherwin-Williams claim in a suit that was eventually dismissed, they still had a viable suit against Ms. Tomasetti and Deltatech, which was filed. Considering the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the committee found the baseline sanction for respondent’s misconduct is a reprimand.
 

 In aggravation, the committee found respondent has refused to acknowledge the wrongful nature of his conduct. The committee found the following mitigating factors apply: absence of a prior disciplinary record, absence of a dishonest or selfish motive, and personal or emotional problems.
 
 [3]
 

 Considering all the circumstances, the committee recommended respondent be publicly reprimanded. The committee further recommended respondent refrain from representing clients in construction law matters until he has completed fifteen hours of continuing legal education courses in the area of construction law.
 

 Both respondent and the ODC filed objections to the hearing committee’s report. Respondent took issue with the hearing committee’s factual findings and findings of rule violations and argued the formal charges should be dismissed. The ODC likewise took issue with some of the findings of fact made by the hearing committee. In addition, the ODC argued the sanction recommended by the committee is too lenient, and an actual suspension of at least six months is appropriate.
 

 |
 
 ^Disciplinary Board Recommendation
 

 After review of the record, the disciplinary board found the hearing committee’s factual findings are not manifestly erroneous, and adopted same. With regard to the issue of the alleged attorney-client relationship between respondent and Mrs. Miller, the board agreed the record contains three undisputed facts tending to defeat any notion that respondent formed such a relationship with Mrs. Miller: (1) Mrs. Miller had a three-minute telephone conversation minutes before she met with Mr. Barrios, who worked over two hours in evaluating her case; (2) Mr. Barrios testified that even though he did not work
 
 *213
 
 much beyond two hours for Mrs. Miller (who ultimately decided not to retain him further), his notes reflect he spoke with respondent; and (3) Ms. Tomasetti — not respondent — presented Mrs. Miller with the assignment of rights. Based on these facts, the board adopted the committee’s finding of insufficient proof of an attorney-client relationship, and as did the committee, rejected the allegations of the formal charges which require such a relationship.
 

 Turning to the issue of dealing with a person unrepresented by counsel, the board rejected respondent’s argument he should not be held accountable for Ms. Tomasetti transmitting the assignment of rights to Mrs. Miller without explanation from him. The board noted the undisputed evidence, much of it from respondent’s own testimony, establishes there was a conflict of interest between Ms. Tomasetti and Mrs. Miller, and respondent encouraged Mrs. Miller to execute the assignment of rights (a document he drafted) without explaining his allegiances lie with Ms. Tomasetti (his then-client, and his current wife). Significantly, respondent testified he continued to talk with Mrs. Miller even though he “believe[d] that she was either represented by counsel or considering whether to be represented by counsel or continued to be represented by counsel.” Based on these facts, the board concluded 19the committee was correct in finding respondent violated Rule 4.3. The board likewise agreed respondent intentionally concealed his own interests in supporting Ms. Tomasetti, and therefore violated Rule 8.4(c).
 

 The board determined that by misrepresenting himself as disinterested in a conflict of interest between his client and Mrs. Miller, respondent violated duties owed to the legal system, to the public, and to the profession. By its very nature, his conduct was both knowing and intentional.
 
 [4]
 
 The injury from this misconduct was apparently minimal, however, as the record reflects Mrs. Miller herself believed the problems she was experiencing with the floor were due to Ms. Tomasetti’s improper application of the staining product. Notwithstanding respondent’s misconduct, Mrs. Miller later brought a timely suit against Ms. Tomasetti. Considering the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the baseline sanction for respondent’s misconduct is a reprimand.
 

 In mitigation, the board found the following factors: absence of a prior disciplinary record and personal problems stemming from the loss of respondent’s home and office in Hurricane Katrina. The board determined the aggravating factors present are a dishonest or selfish motive and refusal to acknowledge the wrongful nature of the conduct.
 

 Concerning the issue of an appropriate sanction, the board rejected the ODC’s argument that an actual six-month suspension is appropriate discipline in this case. The ODC’s argument is premised upon an attorney-client relationship and a finding of a conflict of interest. Here, there was no actual conflict of interest between | inrespondent and Mrs. Miller, because there was no attorney-client relationship. However, the board agreed with the ODC that a public reprimand is unduly lenient
 
 *214
 
 for respondent’s acts of misrepresentation and unfair treatment of an unrepresented party. Accordingly, the board recommended respondent be suspended from the practice of law for one year, fully deferred, subject to a two-year period of probation with conditions.
 

 Respondent filed an objection to the disciplinary board’s report and recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Banks,
 
 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings.
 
 See In re: Caulfield,
 
 96-1401 (La.11/25/96), 683 So.2d 714;
 
 In re: Pardue,
 
 93-2865 (La.3/11/94), 633 So.2d 150.
 

 The factual findings of the hearing committee are supported by the record. Based on these findings, both the committee and the disciplinary board determined there was no attorney-client relationship between respondent and Mrs. Miller, and the misconduct in this case stems from respondent’s interaction with an unrepresented |T1person (Mrs. Miller), in violation of Rules 4.3 and 8.4(c) of the Rules of Professional Conduct. We agree with this determination.
 

 Rule 4.3 provides:
 

 In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer’s role in a matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client.
 

 Thus, Rule 4.3 has three components which come into play whenever a lawyer is dealing on a client’s behalf with a person is not represented by an attorney: first, the lawyer may not imply disinterestedness; second, the lawyer must clear up any misunderstanding about his or her role; and third, the lawyer may not give legal advice if the unrepresented person’s interests may be adverse.
 

 In this case, there was a potential for a conflict of interest between Ms. Tomasetti and Mrs. Miller, which respondent did not disclose to Mrs. Miller. Nevertheless, respondent drafted the assignment of rights in favor of Ms. Tomasetti, and Ms. Toma-setti presented the assignment to Mrs. Miller. Because Mrs. Miller’s interests were adverse to Ms. Tomasetti’s, respondent had an obligation to clearly state his position, which he failed to do. We agree this conduct violated Rules 4.3 and 8.4(c).
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful disciplinary proceedings are designed to maintain high 112standards of conduct, protect the public,
 
 *215
 
 preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 We find respondent’s misconduct was negligent, and caused little or no actual harm to Mrs. Miller. The applicable baseline sanction is a public reprimand.
 

 The mitigating factors present are absence of a prior disciplinary record, absence of a dishonest or selfish motive, and personal or emotional problems. We find no aggravating factors.
 

 Considering all the circumstances, we will publicly reprimand respondent for his misconduct.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Karl J. Guilbeau, Louisiana Bar Roll number 20558, be and he hereby is publicly reprimanded. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal' interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 *
 

 Kimball, C J., did not participate in the deliberation of this opinion.
 

 [1]
 

 . Respondent has been ineligible to practice law since September 11, 2006 for failure to pay his bar dues and the disciplinary assessment. He is also ineligible for failure to comply with the mandatory continuing legal education requirements and for failure to file a trust account disclosure form.
 

 [2]
 

 . Ms. Tomasetti was dating respondent at the time of these events. They were married in December 2005.
 

 [3]
 

 . The committee observed respondent was affected by Hurricane Katrina, which caused the loss of his law office and its contents.
 

 [4]
 

 . Although the committee determined respondent's conduct was negligent, the board noted such a finding is inconsistent with the committee’s conclusion that respondent violated Rule 8.4(c), its recommendation for the application of certain ABA Standards which require "knowing” misconduct, and respondent’s testimony that he believed Mrs. Miller was represented by counsel when he spoke with her, yet he continued to persuade her to accept Ms. Tomasetti's assurances about how to best handle the situation and correct the defects with her floor.